## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT
## OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY
3:23-cv-1112-TJC-MCR

| UNITED STATES DISTRICT COURT | District: **FLORIDA** | |
|---|---|---|
| Name (under which you were convicted): <br> **DOMINIQUE J. FUDGE** | | Docket or Case No.: <br> **16-2017-005957-AXXX-MA** |
| Place of Confinement : <br><br> Jefferson Correctional Institution <br> 1050 Big Joe Road, Monticello, FL 32344 | Prisoner No.: <br><br> **J61534** | |
| Petitioner (include the name under which you were convicted) <br><br> **DOMINIQUE J. FUDGE** | Respondent (authorized person having custody of petitioner) <br><br> v.     **STATE OF FLORIDA** | |
| The Attorney General of the State of Florida: Ashley Moody | | |

### PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   Duval County, 4th Judicial Circuit.

   (b) Criminal docket or case number (if you know): 16-2017-CF-005957-AXXX-MA

2. (a) Date of the judgment of conviction (if you know): February 28, 2018

   (b) Date of sentencing: March 27, 2018

3. Length of sentence: 50 years

4. In this case, were you convicted on more than one count or of more than one crime? ☐ Yes ☒ No

5. Identify all crimes of which you were convicted and sentenced in this case: on Amended information;

   Robbery with a Firearm

6. (a) What was your plea? (Check one):

   ☒ (1) Not Guilty          ☐ (3) Nolo contendere (no contest)

   ☐ (2) Guilty              ☐ (4) Insanity plea

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or

   charge, what did you plead guilty to and what did you plead not guilty to? N/A

   (c) If you went to trial, what kind of trial did you have? (Check one) ☒ Jury  ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?  ☐ Yes ☒ No

8. Did you appeal from the judgment of conviction?  Yes ☒  ☐ No

9. If you did appeal, answer the following:

    (a) Name of court: <u>First District Court of Appeal</u>

    (b) Docket or case number (if you know): <u>1D18-1784</u>

    (c) Result: <u>Per Curiam Affirmed</u>

    (d) Date of result (if you know): <u>Mandate August 9, 2019</u>

    (e) Citation to the case (if you know): <u>N/A</u>

    (f) Grounds raised:

    (g) Did you seek further review by a higher state court?  ☐ Yes  ☒ No

        If yes, answer the following:

        (1) Name of Court: <u>N/A</u>

        (2) Docket or case number (if you know): <u>N/A</u>

        (3) Result: <u>N/A</u>

        (4) Date of result (if you know): <u>N/A</u>

        (5) Citation to the case (if you know): <u>N/A</u>

        (6) Grounds raised: <u>N/A</u>

    (h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes ☒ No

        (1) Docket or case number (if you know): <u>N/A</u>

        (2) Result: <u>N/A</u>

        (3) Date of result (if you know): <u>N/A</u>

        (4) Citation to the case (if you know): <u>N/A</u>

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or petitions concerning this judgment of conviction in any state court? ☒ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

    (1) Name of court: <u>Fourth Judicial Circuit, Duval County, Florida</u>

    (2) Docket or case number: <u>2017 CF 5957</u>

(3) Date of filing (if you know): <u>October 17, 2019</u>

(4) Nature of the proceeding: <u>3.800(c)</u>

(5). Grounds raised: <u>Motion to reduce or modify sentence</u>

(6) Did you receive a hearing where evidence was given on your petition, application, or petition?

☐ Yes ☒ No

(7) Result: <u>Denied</u>

(8) Date of result (if you know): <u>November 12, 2019</u>

(b) If you filed any second petition, application, or petition, give the same information:

(1) Name of court: <u>Fourth Judicial Circuit, Duval County, Florida</u>

(2) Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

(3) Date of filing (if you know): <u>June 16, 2020</u>

(4) Nature of the proceeding: <u>3.850 (Postconviction Relief)</u>

(5) Ground Raised: <u>Five Grounds (1) Failure to Investigate, (2) Failure to Impeach, (3) Failure to Sever, (4) Failure to Convey a Plea, (5) Misadvising as to not testifying; After Amendment I added three more grounds as follows: (6) Failure to Request "Independent Act" Jury Instruction, (7) Failure to Object to Admission of Impermissible Identification, (8) Failure to Properly and Adequately Move for JOA.</u>

(6) Did you receive a hearing where evidence was given on your petition, application, or petition?

☐ Yes ☒ No

(7) Result: <u>Denied without opinion.</u>

(8) Date of result (if you know): <u>February 11, 2022</u>

(c) If you filed any third petition, application, or motion, give the same information:

1. Name of court: <u>9.141</u>

2. Docket or case number (if you know): <u>1D21-2466</u>

3. Date of Filing: <u>May 25, 2022</u>

4. Nature of the proceeding: <u>9.141 Appeal</u>

5. Grounds raised: <u>(1) Ineffective Assistance of Appellate Counsel for failing to raise Ineffective Assistance of Trial Counsel on the face of the record; Failure to properly and Adequately Move for JOA. (2) Ineffective Assistance of Appellate Counsel for failing to raise Ineffective Assistance of Trial Counsel on the face of the record; which led to Bruton violation. (3)</u>

<u>Ineffective Assistance of Appellate Counsel for failing to raise Ineffective Assistance of Trial</u>
<u>Counsel on the face of the record; failure to object to the admission of an Impermissible</u>
<u>Identification of Petitioner.</u>

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

7. Result: <u>Denied</u>

8. Date of result: <u>April 6, 2022</u>

(d) If you filed any fourth petition, application, or motion, give the same information:

1. Name of court: <u>First District Court of Appeal, Duval County, Florida</u>

2. Docket or case number: <u>1D22-767</u>

3. Date of Filing: <u>July 6th, 2022</u>

4. Nature of the proceeding: <u>3.850 (Postconviction Appeal)</u>

5. Grounds raised: <u>(1) Failure to investigate and introduce evidence of K.S.O.; (2) Failure to present</u>
<u>exculpatory evidence; (3) Failure to move for severance and/or object to Motion for joinder,</u>
<u>resulting in a *Bruton Violation*; (4) Failure to adequately represent during plea process; (5)</u>
<u>Failure to advise Appellant regarding his testimony; (6) Failure to request "Independent Act"</u>
<u>jury instruction; and (7) Failure to object to inadmissible identification.</u>

6. Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☒ No

7. Result: <u>Denied</u>

8. Date of result: <u>November 3, 2022</u>

(e) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or petition?

(1) First petition:      ☒ Yes ☐ No

(2) Second petition:    ☒ Yes ☐ No

(3) Third petition:     ☒ Yes ☐ No

(4) Fourth petition:    ☒ Yes ☐ No

(5) Fifth petition:     ☒ Yes ☐ No

(6) Sixth petition:     ☒ Yes ☐ No

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE AND PRESENT RELEVANT MATERIAL EVIDENCE AND TESTIMONY REGARDING A "KEEP SEPARATE" ORDER COUNSEL'S FAILURE RESULTED IN A VIOLATION OF PETITIONER'S RIGHT TO EFFECTIVE COUNSEL REPRESENTATION, DUE PROCESS AND FAIR TRIAL UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner submits that his counsel performed deficiently when counsel failed to investigate and present material evidence at trial to refute co-defendant testimony about alleged conversation between them when they were in jail.

(1) After receiving Sixth Supplemental Discovery on December 22, 2017, where co-defendant Mr. Pinder alleged that while incarcerated he encountered petitioner, who at the time supposedly told him that he (Petitioner) and Wilson planned the said robbery together. And needed a third person namely him.

(2) Petitioner advised counsel that he was never housed together with Pinder and they were subject to a "keep separate order" filed on July 6, 2017.

(3) Petitioner also asked counsel to investigate and call lead detective in the case to testify at trial to corroborate the existence of the "KSO" to establish as fact. That the Petitioner was **not** housed at anytime with Pinder during the time of alleged conversation. Hence this said confession from Petitioner was made 5 months after the July 6, 2017 file "KSO".

Petitioner submits that his counsel performed deficiently when counsel failed to investigate and present said order. Said order would have refuted and caused reasonable doubt to co-defendant Pinder's testimony, which was crucial evidence to Petitioner's conviction. Where Pinder testified to this alleged conversation at trial.

Petitioner raised this issue as ground one in his State Court rule 3.850 motion. The claim was denied. (See Exhibit A)

**Reasons why denial was erroneous:**

On December 22, 2017, the Petitioner received his 6th supplemental discovery from the State and became aware prior to trial that his co-defendant Mr. Pinder, was going to allege that during a conversation they allegedly had while in jail together, the Petitioner admitted to him to being an active participant in the planning of the robbery. Upon learning this, Petitioner advised counsel that he was never housed together with Pinder because they were subject to a "KSO" filed on July 6, 2017.

The Petitioner alleged that he asked counsel to investigate this and present it at trial, as well as the testimony from the lead detective to corroborate the order's existence and why it existed. The Petitioner identified that counsel did not act reasonably and failed to present this evidence at trial, which would have undermined the credibility of Pinder's testimony.

The Petitioner also established that had this information been presented at trial, it would have discredited Pinder's testimony and as a result, the State's entire case because he was such a critical witness. The Petitioner further established that because of the critical nature of his testimony, if counsel had acted reasonably, the outcome of the case would have been different. Therefore, the Petitioner established a facially sufficient claim under *Strickland*.

The trial Court, in denying relief, found that the Petitioner couldn't establish either prong under Strickland because the keep separate order would not have lessened the believability of Pinder, but instead would have shown they were actually conversing. This is speculative, the ""KSO" was put in place due to phone calls Defendant and Co-Defendant Pinder called the same person from the jail. Not because Defendant and Co-Defendant Pinder were housed together and conversating. The "KSO" was placed to prevent the Defendant and Co-Defendant from being housed together to conjure a scheme to intimidate a witness. However, counsel's failure to investigate goes beyond the "KSO" itself. The "KSO" does establish that from July 6, 2017 to December 22, 2017; where the statement was made to Assistant State Attorney,

Chase Harris, it would be impossible for the Defendant to convey knowledge of the robbery. The investigation would have further provided the jail records would affirmatively established that even prior to the "KSO", the Defendant and Co-Defendant Pinder were never housed together between June 28 – July 6, 2017. Contrary to the trial court's speculation in its denial. Which was without attachment of the record, according to Fla.R.Crim.P. 3.850 is a violation of Petitioner's due process rights to deny said claim without any attachment of the record.

The statement from Pinder alleging the conversation was made December 22, 2017 (R. 321) – Also, Pinder testified that "a couple weeks after his arrest" was when he had the conversation with the Petitioner. The Petitioner was in custody for eight days before the order was entered. This does not refute the Petitioner's claim. (This supports his allegation that he was never housed in the same area as Pinder.) This order supports his allegation that he was never housed with Pinder. The Trial Court is purely speculating that Pinder's testimony of "a couple of weeks" meant that he was with the Petitioner during two weeks Pinder was in custody. Which would be one week that the Petitioner was, before the keep separate order. Speculation is not enough to refute a sworn claim by the Petitioner.

Therefore, the State Court's decision is based on an objectively unreasonable determination of the facts as to whether Petitioner and co-defendant Pinder were ever housed together as well as on objectively unreasonable application of clearly established federal law, because counsel's failure to investigate and present these exculpatory facts, violated Petitioner's Constitutional Rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. See also, Strickland v. Washington. In conclusion, Petitioner asserts that the State court's decision is in violation of 28 U.S.C. , § § 2254(d)(1) and (d)(2), as well as his 5th, 6th, and 14th U.S.C. Amendments, in regards to effective counsel representation, right to present favorable witnesses, due process and a fair trial. Thus *Writ of Habeas Corpus* should be granted and a new trial ordered. Alternatively, an evidentiary hearing should be held in order to resolve any matters before ordering a new trial. It is so prayed.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes  ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct Appeal.</u>

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2) If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: <u>Florida Rules of Criminal Procedure 3.850 Motion for Post Conviction Relief</u>

Name and location of the court where the petition or petition was filed:

<u>Duval County Fourth Judicial Circuit</u>

Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

Date of the court's decision: <u>February 11, 2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(3) Did you receive a hearing on your petition or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your petition or petition?    ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: <u>N/A</u>

**GROUND TWO:**    PETITIONER'S    CONSTITUTIONAL    RIGHT    TO    EFFECTIVE REPRESENTATION WAS INFRINGED BY COUNSEL'S FAILURE TO PRESENT EXCULPATORY EVIDENCE AND PLACE IT ON RECORD AT PETITIONER'S REQUEST WHICH VIOLATED THE DEFENDANT'S 6TH, AND 14TH AMENDMENT RIGHTS.

(a) Supporting facts (Just state the specific facts that support your claim.):

Defendant informed counsel that his Co-Defendant Pinder (Pinder) forwarded to him a hand written note that was (in short) a confession by Mr. Pinder as to the actual events of the robbery and his significant role in such. The note confirmed statements that Mr. Pinder was forced to lie in his testimony against Mr. Fudge. This letter was given to counsel by Defendant. However, counsel failed to use said exculpatory evidence in Defendant's defense and failed to use it to impeach the State's key witness's contradicting testimony.

Petitioner avers that he was denied effective assistance of counsel when his trial attorney failed to present exculpatory evidence (a note from his co-defendant), which was beneficial to Petitioner during trial. Counsel's omission resulted in deficient performance, establishing the first prong of *Strickland*. This omission, left unchecked, was highly prejudicial to Defendant as Mr. Pinder testified during trial that he encountered Petitioner while incarcerated in jail and that Petitioner told him he knew about the plan to commit robbery and that they needed a third person (TT pg. 331), had counsel presented the exculpatory

evidence (the note written by co-defendant), he could have impeached State's key witness (Pinder) and attacked his credibility thus distinguishing the impact of his demeaning testimony.

Petitioner raised this issue as ground two in his State court rule 3.850 motion. The claim was denied. (See Exhibit A)

**Note that this ground was conceded by the State for an evidentiary hearing.** The Court erred in denying this claim because:

(Petitioner presented a facially sufficient claim that counsel failed to investigate and introduce exculpatory evidence in the form of a written confession that would have supported his theory of innocence and that claim was not conclusively refuted by the record.)

Specifically, the Trial Court found that (1) Pinder had already admitted to his "Significant Role" in the robbery at trial and (2) counsel did impeach Pinder and any further impeachment would have been cumulative. (R 367). This is not supported by the record. First, Pinder did not admit that his role was as significant as he did in the confession note. At trial, Pinder, admitted to being involved, but placed a majority of the blame on the Appellant. The note directly contradicts his testimony, and alleges that he was forced to lie about the Appellant's involvement. There is nothing about the testimony at trial that refutes this allegation.

Furthermore, simply because counsel impeached Pinder on some of his inconsistent statements does not mean that he doesn't have to continue to impeach his testimony. Especially when there was evidence available to impeach his testimony that would have allowed the jury to see that he was not being truthful. As courts have previously found that just because counsel impeaches witness partially, that does not mean counsel was not further deficient for failing to impeach them wholly, especially when the witness is of critical significance to the State's case.

Finally, in denying Ground Two, the State court made an objectively unreasonable application of facts and law when finding that Petitioner was not prejudiced for counsel's failure to introduce a note from co-Defendant Pinder, which Pinder allegedly stated that the State was forcing him to say that Petitioner

was involved with the robbery. In denying this claim, the State court only addressed that counsel had impeached Pinder's testimony on other grounds and that Pinder admitted his involvement in the robbery. However, proper application of the facts involving the note reveals that it was the State's misconduct resulting in Pinder testifying in the manner that he did concerning Petitioner's involvement. This major exculpatory impeachment evidence, had it been presented to the jury would have completely undermined the effect of Co-Defendant Pinder's testimony of Petitioner Fudge's involvement in the crime. The State court's decision is the result of an objectively unreasonable determination of the facts in light of the evidence that was presented in the state court proceedings and has denied Petitioner due process of an evidentiary hearing and Petitioner has been denied effective assistance of counsel as determined by to the United States Supreme Court's holdings in Strickland v. Washington. As such, Petitioner is entitled to relief from the State court's objectively unreasonable application of clearly established Federal Law. Wherefore, Petitioner asserts that the state court's decision is in violation of 28 U.S.C. § § 2254(d)(1) and (d)(2), as well as his 5th, 6th, and 14th U.S.C. Amendments, in regards to effective counsel representation, due process and a fair trial. Thus *Writ of Habeas Corpus* should be granted and a new trial ordered. Alternatively, an evidentiary hearing ordered to resolve any matters before ordering a new trial. It is so prayed.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐ Yes  ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct</u> <u>Appeal.</u>

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?  ☒ Yes  ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of petition or petition: <u>Florida Rules of Criminal Procedure 3.850 Motion for Post Conviction</u>

<u>Relief</u>

Name and location of the court where the petition or petition was filed:

<u>Duval County Fourth Judicial Circuit</u>

Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

Date of the court's decision: <u>February 11, 2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied, no opinion.</u>

    (3) Did you receive a hearing on your petition or petition?   ☐ Yes   ☒ No

    (4) Did you appeal from the denial of your petition or petition?   ☒ Yes   ☐ No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

                                                           ☒ Yes   ☐No

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available)<u>: Denied.</u>

    (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

    etc.) that you have used to exhaust your state remedies on Ground Two: <u>N/A</u>

**GROUND THREE:** TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE

STATE'S MOTION FOR A JOINT TRIAL; FAILING TO MOVE FOR SEVERANCE OF THE

PROCEEDINGS UPON PETITIONER'S REQUEST TO BE TRIED SEPARATELY, AND SUCH FAILURES DEPRIVE <u>DEFENDANT</u> OF FAIRLY SELECTING HIS JURORS DURING VOIR DIRE, AND ALLOWED A BURTON VIOLATION WITH THE PRESENTATION OF PREJUDICIAL TESTIMONY AND EVIDENCE BEFORE A "DUEL-JURY". COUNSEL'S FAILURES RESULTED IN MULTIPLE VIOLATIONS OF DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL AND TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The State filed a motion seeking a joinder of Petitioner's trial with that of his co-defendant Wilson upon learning of the State's motion. The Petitioner contacted counsel and requested that he object to the object to the joinder motion, and directed him to file a separate motion to sever the trial proceedings from his co-defendant. Counsel, however, failed to take either of these actions which resulted in irreparable harm to Petitioner as demonstrated by the 50 year sentence he received.

When confronted regarding his failure to act by stating Petitioner was clearly innocent that the robbery was obviously an independent act of the other two co-defendants (Pinder and Wilson).

Counsel further excused his actions by reasoning that because Defendant only arrived at the scene when the robbery was already in progress. Which would be easy to establish in front of the jury and that a severance was not ethical or needed.

But in Petitioner's case, there were multiple reasons why the severance was the proper course of action. As counsel conceded, there was no competent substantial evidence proving that Petitioner had any foreknowledge of the robbery, was part of the planning, was involved in it, or benefited from it in any way. Except the only allegations that Petitioner had knowledge of the robbery came from Pinder who testified against Petitioner and Wilson at trial as a State witness. Pinder's testimony included assertions that Petitioner admitted to being involved while incarcerated in the county jail. That assertion, however

was unreliable and had no basis in fact, as demonstrated by his (Mr. Pinder's) own testimony at trial indication that Petitioner was unaware of the robbery at the time it was happening (see TT page 336: 5-8).

Counsel's failure to separately file a motion for severance and objecting to State's motion for joinder of proceedings compounds the prejudice suffered by Petitioner herein in two distinct areas.

**(A) Counsel's failure rendered the jury voir dire fundamentally unfair.**

The dual jury approach deprived Petitioner of a fair opportunity to pick a preferred jury for his trial. The fact that both Mr. Wilson and Petitioner had to choose from a single jury pool of prospective jurors deprived Petitioner from selecting specific jurors.

Wilson picked jurors 2, 7, 15, 18, 20 and 21 from the jury pool created for the joint trial. The Petitioner was then left to pick the jurors that were left in the pool after his co-defendant had made his preferred choices, which included specific jurors that Petitioner wanted to empanel for his trial (2, 7, and 20).

Thus, Defendant was left to pick jurors from the remnants left by Mr. Wilson after he selected his preferred jurors (See TT page 139-147) being forced into such an unfair jury selection process deprived Petitioner of a fair trial from its very inception.

Petitioner has met the second prong of Strickland v. Washington as set forth in his motion for post conviction relief and appellate brief on the denial of, that he suffered a structural default of joinder of trials, leaving two Defendants to select jury from the same pool and because Petitioner's Co-Defendant selected first, he was left to choose from the less desirable jury selection of the pool.

**(B) Counsel's failures permitted prejudicial testimony and evidence before a "duel-jury", where such would have been inadmissible during "separate jury" proceedings and further allowed for a Bruton violation as discussed of concerns prior to trial.**

The record of trial reveals that as a result of holding joint proceedings, testimony and evidence presented by the State, as well as arguments made by the defense in Mr. Wilson's trial counsel, irreversibly tainted the proceedings in Petitioner's case and thus violated Petitioner's right to a fair and impartial trial.

While the joint defendants may have indeed been tried by separate juries, the entire trial(s) and the witnesses, testimony, evidence and argument presented therein were presented to both juries. The lone exceptions were brief testimony of detective (Det. Bruce), certain portions of Mr. Pinder's testimony, and closing arguments that were not heard by both juries. By then, however, the damage to Petitioner's case had already been done, and was irreparable. Both juries heard virtually all of the evidence in both cases, but were then instructed, and expected to, disregard portions of what they heard when they went to deliberate – a virtual impossibility given human nature.

Significantly, and of particular concern was the fact that Counsel's opening statements as to each of Defendant's "separate cases" was heard by both juries. (Exhibit A 3.850 postconviction relief Ground Three). The court was clearly concerned with the implications of testimonial and evidentiary issues been presented before it, as demonstrated by the following statements of the court to the state:

1. The State, in Mr. Wilson's case, going first immediately sought to link the guilt of Wilson and Defendant herein (Mr. Fudge)(Exhibit – C, TT 182:13-21).

2. The State argued in Mr. Wilson's "opening" that the co-defendants (Wilson and Fudge) "all worked together" and that a detective would so testify (Det. Bruce)(Exhibit – C, TT 183,186, 187).

3. Wilson's counsel was quick to lay blame on Defendant Fudge, telling the jury that it was Mr. Fudge depicted in a video of the crime and that you can see Mr. Fudge "as clear as day" – which was in fact far from accurate. Wilson's counsel would likewise suggest that Mr. Fudge had been identified by police (Exhibit C, TT 195:10-17, 196:7-12).

4. Wilson's counsel sought to detail the victim's testimony regarding Defendant Fudge's alleged participation in the robbery. Even though the victim could not identify Defendant Fudge, counsel for Wilson coaxed significant testimony from the victim about "the person behind him with a gun" not only through what the victim recalled, but in detail from the video evidence as well. The State maintained that person to be Mr. Fudge (Exhibit – C, TT 252-254).

5. The co-defendant who testified for the State (Mr. Pinder) was quick to link Defendant Fudge with Wilson, testifying that while Wilson stated he was "going to rob" the victim, Fudge was behind the victim with a "real gun"(Exhibit – C, TT 282, 285, 314).

The court was clearly concerned with the implications of testimonial and evidentiary issues being presented before it, as demonstrated by the following statements of the court to the State:

THE COURT:    Yeah, I, you know, can I ask you a question? . . . How are you going to get going from back and forth from jury room to jury room? (TT 214).

THE COURT:    God bless, Ms. Huish, what do you think we are going to do this, then? (TT 476).

THE COURT:    It's not what I like, it ain't my case. I'm asking you people, when you try a case like this and you've got two juries going into two separate rooms and you've got all this evidence that pertains to two people, how in the heck do you think two juries are going to be able to look at it? How do we do that? Tell me. I can't figure it  (TT 477).

. . .

THE COURT:    I don't think I'm in the business of all of a sudden telling a jury, you know what, you've seen that long enough, give it back, because I've to give it to another group of people. I don't think I can do that, and that's the problem  (TT 477).

THE COURT:    . . .  Now, I'll say this, quite frankly, this is interesting to me that in all the trials that I've had, this is the first trial [where] two defendants, two juries, so I'm in new ground. That's what I'm saying, you tell me. Maybe I'm just coming from left field, but it strikes me as a problem. Now, you experts may have done this before, so you know – and I don't mean that facetiously, you know a heck of a lot more about it than I do, because you've done it before. So, if you have, raise your hand.

Whoops, nobody has done it before. Ouch, so we're all treading new ground. And if you had done it before, I want you to tell me how did you work through that little problem? Which tells me some phone calls have got to be made to the higher ups at the offices tonight to figure it out, because I don't see how you do it (TT 478).

THE COURT:    Okay. Does anybody want me to remind these jurors that they're here on specific case, Wilson for Wilson, Fudge for Fudge, and at the end of the trial they're going to make a decision as it relates to – While they're going to hear evidence as to both, they're going to only make a decision as to their respective guy? (TT 220).

The court and counsel also sparred over the "all manner of exhibits that have been stipulated

to" in both cases (1557 total)(Exhibit – C, TT 215-216); separating closing arguments (upon

realizing the mistake of having allowed opening statements in front of both juries)(TT 479-482); the distribution of evidence between juries (Exhibit – C, TT 482-486); and separate verdicts (Exhibit – C, TT 776).

Finally, and as an explicit foresight into the very issues raised herein by Defendant in the instant Ground Two, the court vented its exasperation with the course of the proceedings and stated:

> THE COURT: Anyway, I learned a lesson. I ain't doing this way again. So, thank you very, very much for helping me learn a lesson, even if at this stage of the game. I've tried – **I've been a Judge since 2002, I've tried a lot of cases, and oddly enough, when I started thinking about it, I've never in all my years had this situation come up. We've never had a jury – a Bruton issue case where I had two juries for two different defendants,** and I probably tried a couple hundred jury trials, it never happened.
>
> . . .
>
> So, you see it's very rare, and now it's even going to be more rare, because **if anyone asks me about doing it, I'm going to tell them no** (TT 776)(emphasis added).

Clearly, the trial court's comments leave no room to the imagination or for guessing as to the irreparable damage and prejudice brought upon Defendant by choosing to hold a dual-jury trial in this case.

The crux of a Bruton violation is the introduction of statements which incriminate an accused without affording him an opportunity to cross-examine the declarant. As such, here on cannot say without certainly that cross-examination of proceedings with opening statements and presentation of testimony and evidence before dual juries did not irreparably prejudice the Petitioner by depriving him of his due process to a fair trial.

In sum, counsel for Defendant herein critically erred in two fatal respects with regard to the reasonable diligence expected of him: First, he failed to object to the State's motion for joinder,

and move to sever his case from that of Mr. Wilson, a motion likely granted under the circumstances, and certainly in light of the court's exasperation with proceedings over which he eventually presided.

Second, once the Defendant's cases were joined, counsel compounded his error in failing to object to countless statements and the proceedings themselves in which direct testimony, cross-examination, and even argument from a co-defendant's trial permeated and infected his own jury into a guilty verdict, and at the least, guilty by association.

Consequently, Defendant Fudge suffered the ultimate measure of prejudice from counsel's failure to sever the trials, which resulted in "dual-jury" scheme that was worked solely to the advantage of the State.

Petitioner presented a facially sufficient claim that counsel acted deficiently when he failed to move for a severance and failed to object to the State's motion for joinder, which resulted in a Bruton violation, which was not conclusively refuted by the records.

When Petitioner confronted counsel about his lack of action, trial counsel advised Petitioner that he was clearly innocent, and that the robbery was obviously an independent act of the other two co-defendants, insinuating that any joinder or issues with being tried together would not cause Petitioner any harm. The Petitioner went through multiple reasons as to why counsel should have acted otherwise and requested a severance, and further identified how he was prejudiced as a result.

Petitioner raised this issue in Ground Three of his State court ruled 3.850 motion. The claim was denied. (See Exhibit A) **Reason why denial was erroneous**

First, the Petitioner alleged that he was prejudiced because the dual-jury approach denied him of a fair opportunity to pick a jury for his trial because both himself and Wilson had to choose from a single jury pool of prospective jurors. Second, Petitioner was prejudiced because the testimony and evidence

presented by the State, as well as arguments made by the defense in support of Wilson's defense, irreversibly tainted the fairness of the overall proceedings and violated the Bruton rule. The Petitioner identified the statements made by the State that would not have been appropriate or admissible had trials been severed.

Wherefore, the facts and arguments presented above for Ground Three, clearly establish that the State courts decision is contrary to clearly established federal law as determined by the U.S. Supreme Court in <u>Bruton</u>; is an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court in Strickland and has violated Petitioner's constitutional right effective assistance of counsel and the right to a fair and impartial trial. See United States Constitution Amendment Six.

The trial court made numerous findings when denying the Petitioner's relief. First, the court found that the claim was refuted by the record because there was no Bruton issue (R. 368). However, as outlined above and throughout the Petitioner's motion, as well as reflected in trial transcripts, that is incorrect. Several statements were admitted for the jury to consider, which would have been impermissible had the trials been severed. Also the court found that the joint trial and being exposed to more inculpatory evidence, than if he had been tried separately. Respectfully, as highlighted above, this is erroneous. The amount of evidence that was admitted against the Petitioner because of Wilson was voluminous and had they been tried separately, none of that evidence would have been admissible. Without that evidence, there is a reasonable probability that the outcome of the proceedings would have been different. Which rendered counsel constitutionally ineffective in violation of Petitioner's 6th and 14th amendment rights to a fair trial and effective assistance of counsel and due process as guaranteed by the United States Constitution.

Based on the above, Petitioner asserts that the State court's decision is the result of an objectively unreasonable application of clearly established Federal Law, and an objectively unreasonable determination of the facts in light of the evidence that was presented in the State court proceeding.

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct Appeal.</u>

(d) **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2)    If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: <u>Florida Rules of Criminal Procedure 3.850</u>

Name and location of the court where the petition or petition was filed: <u>Fourth Judicial Circuit</u>

Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

Date of the court's decision: <u>February 11, 2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(3)    Did you receive a hearing on your petition or petition?    ☐ Yes    ☒ No

(4)    Did you appeal from the denial of your petition or petition?    ☒ Yes    ☐ No

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes    ☐ No

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(7)    If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: <u>N/A</u>

**GROUND FOUR:** PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE REPRESENTATION WAS INFRINGED BY COUNSEL'S FAILURE TO CONVEY PLEA OFFER AT DEFENDANT'S REQUEST IN VIOLATION OF DEFENDANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In this fourth argument Petitioner submits that his counsel was ineffective for failing to convey a reasonable plea offer of 10-15 years. On record, to the State attorney or the Honorable Court. Defendant was aware of the State's evidence, which included the falsified testimony of his co-defendant (Pinder). Defendant felt as though he could not win a trial (if he could not successfully impeach his co-defendant). And requested that counsel offer the above mentioned plea to the State in an attempt to avoid trial, however despite misleading Petitioner and his mother (Felisa Fudge)(See Exhibit-D, of 3.850 postconviction relief Affidavit of Felisa Fudge).

Counsel never pursued this avenue. Counsel's omission resulted in deficiency performance establishing the first prong of *Strickland*. This deficient performance of counsel, which resulted in Defendant being subsequently sentenced to fifty (50) years imprisonment, establishes the second prong of prejudice required in an ineffective assistance of counsel claim.

Counsel's failure to convey reasonable plea offer of 10-15 years at Defendant's request was highly prejudicial to Defendant as it deprived him of the opportunity to negotiate a favorable plea to the State for a less harsh sentence. Had counsel attempted to negotiate a plea, there is a reasonable probability that he would have reached an agreement with the State without being forced to go through an unfavorable trial.

Petitioner raised this issue in ground four in his State Court rule 3.850 motion. The claim was denied. (See Exhibit A)

**Note that this ground was conceded by the State for an evidentiary hearing.**

The court erred in denying this claim because Petitioner presented a facially sufficient claim that counsel acted deficiently during the plea negotiation process and that claim was not conclusively refuted by the record. The importance of the plea process cannot be understated. Plea bargaining is an essential component in the administration of justice. The Petitioner presented a facially sufficient claim that counsel was deficient when failed to represent him adequately during the plea negotiation process. The Petitioner alleged that counsel was deficient for failing to convey a reasonable plea offer at 10 to 15 years, on record, to the state and the trial court. The Petitioner alleged that he was aware his case carried a 10 year minimum mandatory with a maximum punishment of life, as a result, he asked counsel to offer the mentioned plea offer to the state in an attempt to avoid trial. However, counsel never pursued this avenue, despite misleading Petitioner and Petitioner's mom (Exhibit of 3.850) implying he did relay the plea and the state denied it. The Petitioner also alleged that had counsel done so, he would have accepted the plea offer. Thus, per Strickland, the Petitioner established a facially sufficient claim. This claim was not conclusively refuted by the record, as nothing within the record even discusses this issue. In denying Petitioner's relief, the trial court found that the Petitioner couldn't show prejudice because "the record conclusively establishes neither the state nor this court would have accepted Petitioner's unreasonably low plea offer." (R 371). In making this finding, the trial court relied on the sentence imposed by the court and the recommendations made by the state at the time of sentencing. However, neither of these facts support the summary denial.

First, any comments that were made at sentencing are not a reflection of what the state or court would have done prior to Petitioner's trial. The entire process of entering plea offers is to avoid a trial, to avoid taxpayer dollars, and to resolve a case for a lower sentence. Simply, because the court imposed a larger sentence after the Petitioner exercised his right to go to trial does not mean that it would not have accepted

a lower sentence before trial. This is supported by the record because there is nothing on the record before trial where either the state or the court made any statements reflecting such. The State court decision is based on an objectively unreasonable determination of the facts, as well as an objectively unreasonable application of clearly established Federal Law.

THEREFORE, this court should find that Petitioner's Constitutional rights were violated specifically the 5th, 6th, and 15th Amendments, due process, effective assistance of counsel and fair trial. This is a clear violation of well settled Federal Law.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐ Yes  ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: Not persevered for Direct Appeal.

(d) **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2)    If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: Florida Rules of Criminal Procedure 3.850

Name and location of the court where the petition or petition was filed: Fourth Judicial Circuit

Docket or case number (if you know): 16-2017-CF-005957-AXXX-MA

Date of the court's decision: February 11, 2022

Result (attach a copy of the court's opinion or order, if available): Denied.

(3)    Did you receive a hearing on your petition or petition?    ☐ Yes    ☒ No

(4)    Did you appeal from the denial of your petition or petition?    ☒ Yes    ☐ No

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes        ☐ No

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u> November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available)<u>: Denied.</u>

(7)    If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: <u>N/A</u>

**GROUND    FIVE:**        PETITIONER'S    CONSTITUTIONAL    RIGHT    TO    EFFECTIVE REPRESENTATION WAS INFRINGED WHEN COUNSEL MISADVISED PETITIONER TO NOT TESTIFY WHICH VIOLATED DEFENDANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner avers that his trial counsel was ineffective for advising him to not testify. Such advice cannot be considered as sound trial counsel strategy. Petitioner's defensive strategy was that he was not guilty of armed robbery and that the robbery was an independent act of co-defendants (Pinder and Wilson).

Prior to and during trial, Petitioner advised counsel that he wanted to testify to present his facts (in support of an independent act instruction to the jury) to establish and have brought out "the fact" that he did not help plan the involved robbery, was not part of and withdrew himself from the operation. Further, in being able to establish relevance of the independent act instruction

in conjunction with his defense, Petitioner would have been able to explain why he was not present, and why he did what he did. Counsel was aware of what Defendant's testimony would be.

Trial counsel erroneously advised Petitioner not to testify by asserting to Petitioner that his testimony would support a guilty finding. This advice was frivolous and amounted to deficient performance on behalf of counsel, establishing the first prong of *Strickland*. Petitioner's trial strategy was that the robbery was an independent act of (Pinder and Wilson) and that Petitioner had no prior knowledge of the robbery because he was not there when it was discussed by Pinder and Wilson (see TT page 282) and arrived as it was taking place, in which he also fled during its commission (see TT page 286). Thus counsel's erroneous advice was prejudiced because it deprived Petitioner and persuaded him not to present beneficial testimony on his own behalf, depriving him of a sound trial defense.

Petitioner raised this issue as ground five in his state rule 3.850 motion. The claim was denied. (See Exhibit A)

**Note that this ground was conceded by the State for an evidentiary hearing.**

The Court erred in denying this claim because:

The Petitioner presented a facially sufficient claim to the trial court and identified specific facts in support of that claim. The Petitioner alleged that prior to trial and during trial, he advised trial counsel that he wanted to testify to present his facts, in support of the Independent Act Jury Instruction and theory of defense. The Petitioner specifically wanted to tell the jury that he did not help plan the robbery, was not part of it and was withdrawn from the operation. Further, in being able to further establish relevance of the Independent Act Instruction, the Petitioner would have been able to explain why he was not present and why he did what he did. (R pg. 300). However, trial counsel advised Petitioner that he should not testify because his testimony would support a guilty finding. The Petitioner alleged that this was misadvice and frivolous, amounting in deficient performance per Strickland. The Petitioner, sufficiently alleged that

because of the strategy of trial – i.e., that the robbery was an independent act of Pinder and Wilson and that the Petitioner had no knowledge of the robbery because he was not there when it was discussed between his co-defendants. Counsel's advice was misadvice (R pg. 301). As a result, Petitioner put forth a facially sufficient claim, the only way that the court could have properly summarily denied the claim was if the record conclusively refuted it. The record before this court establishes the opposite: there is nothing within the record that refutes Petitioner's claim.

The court made its finding largely because of dash cam video from the victim's car – which the state used to argue the Petitioner's involvement. However, the contents of said video were in dispute. Specifically, what his actions were as it relates to the robbery were in dispute. Thus, nothing about the video conclusively refutes the Petitioner's version of the events and in fact, arguably could support his testimony at trial. Thus, the courts findings are erroneous. Furthermore, the trial court essentially made a credibility decision about Petitioner's proposed testimony, without entertaining that testimony at an evidentiary hearing. These findings are speculative and not supported by any piece of evidence that is within the record.

The State court's decision was/is premised on an objectively unreasonable determination of facts in light of the evidence presented in the State court proceeding. The fact is that Co-Defendant's testimony would have actually supported Petitioner's testimony – if given – that he did not plan the robbery (TT pg. 315). Petitioner and his Co-Defendants were at an abandoned house – as the record reflects to hang out. This amounted to burglary. The petition stated that he left and went to the store and it was at that time the Co-Defendants schemed to commit a robbery as testified by Pinder (TT pg. 282). Upon returning from the store, Petitioner was confronted with what appeared to be an altercation between the victim and his Co-Defendants. Because Petitioner was in agreement, and a part of the burglary, it was natural to presume that the altercation was due to his Co-Defendants being confronted about that burglary. Therefore, had Petitioner testified, the record and facts of the case would have supported his innocence of the robbery that Co-Defendant Pinder also testified that the Petitioner had no knowledge of. (TT pg. 336).

Therefore, the State court's decision was based on objectively unreasonable application of clearly established Federal Law coupled with an objectively unreasonable determination of facts which also violated Petitioner's right to effective counsel representation, right to testify, right to due process, and a right to a fair trial. United States Constitution Amendments 5th, 6th and 14th.

(b) If you did not exhaust your state remedies on Ground Five, explain why:

(c) **Direct Appeal of Ground Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: Not persevered for Direct Appeal.

(d) **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2)    If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: Florida Rules of Criminal Procedure 3.850

Name and location of the court where the petition or petition was filed: Fourth Judicial Circuit

Docket or case number (if you know): 16-2017-CF-005957-AXXX-MA

Date of the court's decision: February 11, 2022

Result (attach a copy of the court's opinion or order, if available): Denied.

(3)    Did you receive a hearing on your petition or petition?    ☐ Yes    ☒ No

(4)    Did you appeal from the denial of your petition or petition?    ☒ Yes    ☐ No

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes    ☐ No

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: First District Court of Appeal

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(7)    If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Five:


**GROUND SIX:**  PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE REPRESENTATION WAS INFRINGED BY COUNSEL'S FAILURE TO REQUEST INDEPENDENT ACT JURY INSTRUCTION AT DEFENDANT'S REQUEST IN VIOLATION OF DEFENDANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.


(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Petitioner contends that trial counsel was ineffective for failing to request the Independent Act Jury Instruction (Std.Jur.Inst. (crim.) 3.6(1)). The Petitioner's theory of defense was that he did not commit the robbery, nor did he aid or abet the commission of the robbery in any way, was not part of the planning of the robbery or otherwise and thus had no prior knowledge that the robbery would be taken place when it did.

Petitioner informed counsel of the facts and circumstances surrounding the incident which led to his arrest, and made it clear that the armed robbery that took place was the result of the independent actions of his co-defendants (Pinder and Wilson). Petitioner informed counsel of his sudden appearance at the scene of the robbery was purely coincidental, and that his actions of brandishing a gun was instructive. Where Petitioner was reacting to what he knew was an

altercation in which his friends were in danger. Accordingly, it was inexcusable for counsel to not have requested the Independent Act Jury Instructions. This is particularly so given the information provided to counsel by Petitioner and by Pinder's testimony at trial.

Here, counsel was aware of all facts and circumstances surrounding the events which led to Defendant's and the reasonable explanation of what had occurred.

Co-defendant Pinder testified at trial that Petitioner (Fudge) had no knowledge that a robbery would be taken place (TT pg. 336) also testified that Petitioner was not present when he (Pinder) and (Wilson) discussed the plan to commit the robbery.

Counsel's failure to request a Jury Instruction for Independent Act deprived Petitioner of his sole theory of defense, particularly because evidence was presented at trial which supported Petitioner's theory of defense and there existed no reasonable excuse for counsel to forget requesting the Independent Act Jury Instruction, when evidence supports giving the Independent Act Jury Instruction, counsel's failure to do request said instruction provides grounds for ineffective assistance claims.

The Petitioner raised this issue in ground six in his State Court rule 3.850. This ground was denied. (See Exhibit A)

The Court erred in denying this claim because:

The Petitioner presented a facially sufficient claim. The Petitioner alleged that at trial, the theory of defense was that the Petitioner did not commit the robbery, did not and/or abet the commission of the robbery, was not part of the planning of the robbery or otherwise and thus, had no prior knowledge that the robbery would be taken place when it did. Counsel was well aware of the facts prior to trial, and counsel

built his theory of defense around these facts. The Petitioner argued that under these facts and theory of defense, counsel was deficient for failing to request the independent act jury instruction. The Petitioner also alleged that he was prejudiced as a result of counsel's lack of action. Therefore, the Petitioner presented a facially sufficient claim, per Strickland, that was not conclusively refuted by the record. The record did not refute the claim because (1) nothing within the record provided an understanding as to why counsel would not have requested the instruction; (2) the theory of defense presented would have supported the independent act jury instruction, and (3) the jury was not instructed on the instruction.

In denying Petitioner relief, the trial court made two specific findings. First, the court found that the Petitioner was denying being part of any plan and therefore, an independent act instruction would not have been appropriate (R-373). This is erroneous. The Petitioner is acknowledging being present with his co-defendants but the acts of the actual robbery were independent of anything he was involved with. Thus, the instruction would have supported his defense. The second finding made by the court was that counsel "argued during closing that the actions of co-defendants Pinder and Wilson were "independent: from the Defendant's actions. (Ex D at 699, 710, 712). Therefore, counsel did, in fact, present the jury with an imperfect version of the "Independent Act" defense. (R-373). However, this finding contradicts the court's decision to summarily deny this claim. The court admitted that counsel's theory of defense was Independent Act because counsel made that argument to the jury. However, without a jury instruction, the jury would not have been able to even consider counsel's argument. Counsel's argument is not the law and without an instruction, the jury was not able to adequately consider the defense clearly put forth by counsel.

Wherefore, the State court's decision is the result of an objectively unreasonable application of clearly established Federal Law (Strickland) as well as an objectively unreasonable determination of the facts in light of the evidence presented in the State court proceeding because the evidence presented supported that Petitioner and Co-Defendants were illegally in an abandoned

house – which in the State of Florida constitutes burglary. Petitioner's Co-Defendant, Pinder, testified that Petitioner did not have prior knowledge of the robbery (TT pg. 336, lines 5-8). Co-Defendant Wilson was going to pay for the food. (See TT pg. 281). The facts of the case support that the only plan or scheme Petitioner was a part of was the burglary – not robbery. It was not until the Petitioner left the burglarized home to go to the store did his Co-Defendant scheme to rob someone and attempted to carry out their plan. (TT pg. 282).

For this alone Petitioner was entitled to the independent act instruction where the evidence supported giving of the instruction. However, there lies yet another fact deserving of attention. The fact that both Co-Defendants, Pinder and Wilson, had planned to rob the delivery person of money. The victim testified that when he attempted to give the food to the Co-Defendants, they said "That's not going to do" (TT pg. 251). He then testified that he knew they wanted money and then threw the food as a distraction (TT pg. 252). After the victim fled, Pinder made the independent act of picking up the food and taking it. This independent act was not the original plan of robbing for money, and actually amounts to nothing more that theft under Florida law, where the victim never testified that the picking up of the food was done by force or the putting in fear. The only testimony of fear was for the attempt to take money which was prior to the picking up of the food.

Finally, Petitioner's action of coming up on the victim and positioning a firearm at him was a misunderstanding of what he believed was a confrontation between the victim and his co-defendants. Thus, based on the above, the State Court's unreasonable application of clearly established Federal Law, (*Stickland*), as well that was presented in the State Court proceeding. Making this claim is ripe for federal habeas relief, Petitioner has been denied the right to effective assistance of counsel, due process of a jury instruction to support his defense, a fair trial and due process. United States Constitution Amendments 5th, 6th and 14th.

(b) If you did not exhaust your state remedies on Ground Six, explain why:

(c) **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct Appeal.</u>

(d)    **Post-Conviction Proceedings:**

(1)    Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2)    If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: <u>Florida Rules of Criminal Procedure 3.850</u>

Name and location of the court where the petition or petition was filed: <u>Fourth Judicial Circuit</u>

Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

Date of the court's decision: <u>February 11, 2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(3)    Did you receive a hearing on your petition or petition?    ☐ Yes   ☒ No

(4)    Did you appeal from the denial of your petition or petition?    ☒ Yes   ☐ No

(5)    If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes    ☐ No

(6)    If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available)**:** <u>Denied.</u>

(7)    If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: <u>N/A</u>

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Six: <u>N/A</u>

**GROUND SEVEN:** PETITIONER'S CONSTITUTIONAL RIGHT TO EFFECTIVE REPRESENTATION WAS INFRINGED BY COUNSEL'S FAILURE TO OBJECT TO IMPERMISSIBLE IDENTIFICATION BY DETECTIVE BRUCE AT DEFENDANT'S REQUEST IN VIOLATION OF DEFENDANT'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel was constitutionally ineffective for failing to object to the admission of an impermissible identification of Mr. Fudge by Detective Bruce, where identification was made from a videotape, and Detective Bruce had no prior basis of knowledge to identify the Petitioner, and was in no better position than the jury to make such identification.

The record of trial indicates that the State asked Detective Bruce:

"Through your investigation resources, were you able to identify a third suspect in this case?" After answering in the affirmative, the detective identified the "third suspect" as the Petitioner. Then the State team asked: "How were you able to identify him? Was it through video?" to which Detective Bruce first answered "Through a statement, ah--," and counsel, again asked "Was it through the video?" In response, Detective Bruce then confirmed that his identification of the Petitioner herein was "Made through the video, yes."

There is no reasonable explanation for counsel's failure to object to the improper identification of Petitioner by Detective Bruce from a video recording. Detective Bruce's testimony identifying Mr. Fudge as the man depicted in the video was improperly admitted by the trial court because Detective Bruce was in no better position than the jury to identify the Petitioner

at trial, and was not an eye witness to the crime, had no special familiarity with the Petitioner, and was not qualified as an expert in video identification.

Counsel's limp acquiescence to the admission of such an improper identification prejudiced the Petitioner by further undermining the fairness of a proceeding by the admission of Detective Bruce's identification testimony from a video recording prejudiced the Petitioner because it also implied that he was already known by police for being involved in prior criminal activity.

Trial counsel was ineffective for failing to object to the admission of an impermissible identification of Petitioner from a videotape where the detective had no prior bases of knowledge, and was in no better position than the jury to make such identification. As such, counsel's failure in violations of Defendant's right to a fair trial and effective assistance of counsel.

Petitioner raised this issue in ground six of State Court rule 3.850 motion. This claim was denied. (See Exhibit A)

The Court erred in denying this claim because:

The trial court erred in denying this Petitioner's claim of ineffective assistance of counsel, because the Petitioner presented a facially sufficient claim that counsel failed to object to inadmissible identification evidence and that claim was not refuted by the record. The Petitioner alleged that trial counsel was ineffective for failing to object to the admission of an impermissible identification of the Petitioner by Detective Bruce, where the identification was made from a videotape and Detective Bruce had no prior basis of knowledge to identify the Petitioner. The Petitioner alleged that because Detective Bruce was in no better position than the jury to make such an identification. Counsel had a legal responsibility to object to the admissibility of the identification. The Petitioner identified the specific testimony provided by Detective Bruce that was erroneous, as well legal support for the claim. The Petitioner also alleged how he

was prejudiced, making his claim facially sufficient per Strickland. Thus, the only way that it could have been correctly denied was if the record conclusively refuted the claim. The record did not refute the allegations but instead, supported the Petitioner's arguments. The record revealed the improper testimony and counsel's lack of objection, without any explanation as to why. In denying this claim, the trial court found that the Petitioner was not prejudiced. Basing its rational on:

"Here, the theory of defense was not misidentification; indeed, Defendant conceded he was the person shown the video. Further, co-defendant Pinder identified Defendant as the person who came up behind, and pointed a gun toward the victim. (TT pgs. 285-86, 314). Given this evidence and concession, there is no reasonable likelihood the outcome of the proceedings would have been different had Detective Bruce not identified Defendant based on the dash cam footage." (R-374).

However, this is erroneous for several reasons. First, and foremost, although the Petitioner admitted to being present and it was not about misidentification, the specific person that he was within the group and the offense disputed. Meaning, the Petitioner disputed being the person that Pinder claimed he was, i.e., the person who came up from behind and pointed a gun toward the victim. Thus by Detective Bruce's identification, it allowed the jury to give greater credibility to the disputed issue of who the Petitioner was within the video. Further, the court failed to consider the fact that Detective Bruce's testimony led the jury to believe that the Petitioner had previous run-ins with the law and that is why they were able to identify him as a suspect. The trial court's findings are not supported by the record. As a result, the state court should have found that the trial court erred in summarily denying this claim.

Wherefore, the state court's decision was based on an objectively unreasonable determination of facts in light of the evidence presented in the State court proceeding, as well as an objectively unreasonable application of clearly established Federal Law (*Strickland*), where Petitioner alleged prejudice by the impermissible identification – and not misidentification, however it was that Detective Bruce's testimony that he was able to identify Petitioner by means of the video left for

the jury to infer that he has been in contact with law enforcement prior to the offense he was being tried upon. In which he was in no better position than the jurors to make that identification, and was not an eyewitness to the crime, and lastly Detective Bruce was not familiar enough with Petitioner or qualified as an expert in identification to be able to identify Petitioner in the manner in which he did, rendering the process in which Petitioner was tried constitutionally unfair. Therefore, there exist a reasonable probability that but for counsel's error, the jury convicted Petitioner on the notion that he is a known criminal by law enforcement. Also that Petitioner's constitutional rights were violated. Specifically the 5th, 6th, and 14th Amendment Rights to a fair trial, effective assistance of counsel, and due process as guaranteed by the United States Constitution.

(b) If you did not exhaust your state remedies on Ground Seven, explain why:

(c) **Direct Appeal of Ground Seven:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct Appeal.</u>

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction petition or petition for habeas corpus in a state trial court?    ☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of petition or petition: <u>Florida Rules of Criminal Procedure 3.850</u>

Name and location of the court where the petition or petition was filed: <u>Fourth Judicial Circuit</u>

Docket or case number (if you know): <u>16-2017-CF-005957-AXXX-MA</u>

Date of the court's decision: <u>February 11, 2022</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(3)   Did you receive a hearing on your petition or petition?   ☐ Yes   ☒ No

(4)   Did you appeal from the denial of your petition or petition?   ☒ Yes   ☐ No

(5)   If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes   ☐ No

(6)   If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>First District Court of Appeal</u>

Docket or case number (if you know): <u>1D22-767</u>

Date of the court's decision: <u>November 3, 2022.</u>

Result (attach a copy of the court's opinion or order, if available): <u>Denied.</u>

(7)   If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: <u>N/A</u>

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Seven: <u>N/A</u>

**GROUND EIGHT:** PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AS GUARANTEED UNDER THE 6TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN APPELLATE COUNSEL FAILED TO RAISE THE FUNDAMENTAL ERROR ON DIRECT APPEAL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE IMPROPER PRICIPAL JURY INSTRUCTION.

(a) Supporting Facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In support of this claim, Petitioner alleges counsel was ineffective for failing to object the principal instruction. Here, the charging information does not charge Petitioner as a principal. The information states:

Dominque Jarvis Fudge on June 20, 2017, in the county of Duval and the State of Florida, did carry a firearm, and did unlawfully by force, violence, assault, or putting in fear, take money or other property, to wit: Food, the property of Derek Knoepful, from the person of custody of Derk Kneopful

of the many or other property...

No person other than Petitioner was charged in the above information with Armed Robbery. Petitioner was arrested, along with co-defendants Pinder and Wilson. The record at trial reveals that Petitioner had no prior knowledge that a robbery would be taking place, nor was Petitioner involved with planning the robbery. (Trial transcripts pg. 336, 281-282). Petitioner had been to see his friends earlier, and he was coming back to the residence, it appeared to him that the stranger was the one causing a problem with his two co-defendants given the circumstances. At this point, Petitioners next actions was based on his own assumption that there was a potential threat towards his friends. Once Petitioner realized the situation in its entirety, Petitioner then attempted to remove himself. Running from the scene, then there was gun shots as stated at trial by State's witness Pinder (H pg 282). In the event that someone is charged with Armed Robbery, the State is required to prove the following (4) elements beyond a reasonable doubt.

1) That Defendant took money or property as described in the charge from the person or custody of Mr. Derek Knoepful;

2) That force, violence, assault, or putting in fear was used in the course of the taking;

3) That the property taken was of some value; and

4) That taking was with the intent to permanently or temporarily deprive Mr. Derek Kneopful of his right to the property or any benefit from it.

The victim, Mr. Derek Knoepful's own testimony refuted the State's charge of Armed Robbery as charged in the information when he testified under oath to the following on trial transcript page 251-252:

**TT Pg. 251**

Q:    Sir, do you remember at any point either of those individuals actually taking anything from you?

A:    No.

Then, the victim testified that when he attempted to give the food to the codefendants, they said "that's not going to do."

**TT pg. 252**

He testified that he knew they wanted money, then decided to throw the food as a distraction. Therefore, if there was no taking, there was no robbery. At worst, the evidence only supported a conviction for Attempted Robbery.

To further complicate matters, the State's best effort at conviction, the principal instruction was read to the jury for consideration to find guilt through the alleged actions of co-defendant Pinder. Direct evidence from co-defendant Pinder exonerated Petitioner (TT pg. 286, 336). From having been involved in the planning of the attempt to rob Mr. Kneopful, and then Mr. Kneopful's own testimony further removed the elements necessary to convict Petitioner of the Armed Robbery offense, as nothing was taken from Mr. Kneopful.

Once it was established that direct evidence from both the co-defendant Pinder and victim, Mr. Derek Kneopful exonerated Petitioner from the Offense Charged, counsel had an obligation to object to the principal instruction that was read to the jury. *See* Hanks v. State, 43 So.3d 917 (Fla. 2d DCA 2010).

In Hanks, the Court established that when the principal instruction was given to the jury when the charging information and other evidence did not support the instruction, a new trial was ordered. Defendant counsel's failure to object to the principal instruction being given to the jury for consideration was deficient performance that prejudiced Petitioner.

Appellate counsel failed to raise it.

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c) **Direct Appeal of Ground Eight:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☐ Yes  ☒ No

(2) If you did not raise this issue in your direct appeal, explain why: <u>Not persevered for Direct</u>

Appeal.

**(e) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction petition or petition for habeas corpus in a

state trial court?    ☐ Yes    ☒ No

(2) If your answer to Question (d)(l) is "Yes," state:

Type of petition or petition: <u>N/A</u>

Relief

Name and location of the court where the petition or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your petition or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your petition or petition?    ☐ Yes    ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes    ☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal filed: <u>N/A</u>

Docket or case number (if you know): <u>N/A</u>

Date of the court's decision: <u>N/A</u>

Result (attach a copy of the court's opinion or order, if available)**:** <u>N/A</u>

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise

this issue: <u>I did not have legal knowledge in the past to identify the issue. That is why it was</u>

<u>not previously raised. However, if this Court will allow I do have the ability to exhaust the</u>

claim under a void judgment, lack of jurisdiction based on the fundamental error, under

3.850(A)(2) motion **Bryant v State**, 971 So.2d 818, 819 (Fla. 3d DCA 2007) at anytime.

13.  Please answer these additional questions about the petition you are filing:
     (a) Have all grounds for relief that you have raised in this petition been presented to the highest

     state court having jurisdiction?  ☐ Yes    ☒ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them: N/A

     (b) Is there any ground in this petition that has not been presented in some state or federal court?

          If so, which ground or grounds have not been presented, and state your reasons for not

          presenting them? Ground Eight, Reasons presented in Ground.

14.  Have you previously filed any type of petition, application, or petition in a federal court regarding

     the conviction that you challenge in this petition?    ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding the

issues raised, the date of the court's decision, and the result for each petition, application, or petition filed.

Attach a copy of any court opinion or order, if available.

15.  Do you have any petition or appeal now pending (filed and not decided yet) in any court, either

     state or federal, for the judgment you are challenging?  ☒ Yes ☐No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and

the issues raised.

     Name of Court: Fifth District Court of Appeal.

     Location: Daytona Beach, Florida.

     Docket or Case Number: 5d23-0943.

     Type of Proceeding: 3.800 Motion to Correct Illegal Sentence Appeal.

     Issues Raised: (1) Sentence premised on improperly calculated score sheet; (2) Sentence exceeded

statutory permitted; and (3) Sentence unconstitutional disproportionate.

Date: <u>02-17-23.</u>

16.    Give the name and address, if you know, of each attorney who represented you in the

following stages of the judgment you are challenging:

       (a) At preliminary hearing: <u>N/A</u>

       (b) At arraignment and plea: <u>N/A</u>

       (c) At trial: <u>Joshua Beard</u>

       (d) At sentencing: <u>Joshua Beard</u>

       (e) On appeal: <u>Maria Inez</u>

       (f) In any post-conviction proceeding: <u>Pro se</u>

       (g) On appeal from any ruling against you in a post-conviction proceeding: <u>Rachel Reese</u>

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that

you are challenging? ☐Yes  ☒No

       (a) If so, give name and location of court that imposed the other sentence you will serve in

          the future: <u>N/A</u>

       (b) Give the date the other sentence was imposed: <u>N/A</u>

       (c) Give the length of the other sentence: <u>N/A</u>

       (d) Have you filed, or do you plan to file, any petition that challenges the judgment or

          sentence to be served in the future?    ☐Yes ☒No

18.    **TIMELINESS OF PETITION:** If your judgment of conviction became final over

one year ago, you must explain why the one-year statute of limitations as contained in 28

U.S.C. § 2244(d) does not bar your petition. <u>Petitioner has filed motions and petitions in State</u>

<u>court that has tolled the limitations contained in 28 U.S.C. § 2244(d).</u>

The time during which a properly filed application for State postconviction or other collateral

review with respect to the pertinent judgment or claim is pending shall not be counted toward

any period of limitation under this subsection. Therefore, Petitioner asks that the Court grant

the following relief: <u>Grant Habeas relief.</u>

or any other relief to which Petitioner may be entitled.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of:

    (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

    (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**WHEREFORE,** based on the foregoing facts and arguments Petitioner prays that this Honorable Court will find merit with the above-mentioned Grounds and grant Habeas corpus relief.

Respectfully Submitted,

Dominique Fudge DC# J61534

## OATH
## DECLARATION OF INMATE FILING

I declare (or certify, verify, or state) under penalty of perjury and pursuant to **28 U.S.C. §1746** that I, Dominique Fudge; 1) I am an inmate confined at Jefferson Correctional Institution; and 2) I have read the foregoing Petition and all the facts and matters stated therein are true and correct; and 3) I am depositing the Petition for Writ of Habeas Corpus, plus two copies in the prison mailing system. First-class postage is being prepaid either by me or by the institution on my behalf to the Clerk of Court, Mid. Dist, Jacksonville Div. , on this _____ day of _____ 2023.

Respectfully Submitted,

Dominique Fudge DC# J61534
Jefferson Correctional Institution
1050 Big Joe Road
Monticello, Florida 32344
